UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEVIN LERON HINES,

                Petitioner,                Case No. 4:20-cv-11748
                                                          Hon. Victoria A. Roberts

v.

MATT McCAULEY,

                Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, AND (2) DENYING CERTIFICATE OF APPEALABILITY**

Devin Leron Hines ("Petitioner") filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is serving a lengthy prison sentence for his Wayne Circuit Court jury trial convictions for discharging a firearm in a dwelling causing serious injury, MICH. COMP. LAWS § 750.234b(4), carrying a concealed weapon, MICH. COMP. LAWS § 750.227, carrying a weapon with unlawful intent, MICH. COMP. LAWS § 750.226, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and commission of a felony with a firearm. MICH. COMP. LAWS § 750.227b.

The petition raises two claims: (1) Petitioner was denied the effective assistance of counsel when his attorney failed to present alibi witnesses at trial, and (2) there was insufficient evidence presented to sustained Petitioner's carrying a concealed weapon conviction. The Court will deny the petition because the claims are without merit. The Court will also deny a certificate of appealability.

**I. Background**

At Petitioner's jury trial, the victim, Lashuran Brown, testified that on November 28, 2014, he was in his upstairs flat of a two-unit residence in Detroit. (ECF No. 8-7, PageID.326-27.)

Petitioner, who Brown knew as "Munch," lived with his girlfriend in the downstairs flat for the past few months. (id., PageID.327.)

At around 11:30 that evening Brown watching television when he heard a knock on the door. He asked who was there, and he heard the person respond, "Munch." Brown opened the door and allowed Petitioner in. Brown did not see Petitioner with a weapon when he opened the door. (id., PageID.329.)

As Brown turned to walk back into his flat, he heard a "click or rack." He turned around and saw Petitioner pointing a handgun at him. (id., PageID.330.) Brown grabbed Petitioner's wrist, and Petitioner started firing. (id., PageID.331.) The first shot hit a wall, then Brown was hit in the shoulder. Brown turned away, and Petitioner shot him in the back of the neck. Brown fell to the floor, and as Petitioner stepped over him on his way out, he shot Brown once more in the buttocks. (id., PageID.331-332.)

As Petitioner exited he said, "I know you had something to do with that." (id., PageID.332.) Brown testified that he did not have any personal knowledge what Petitioner was referring to, but out of the presence of the jury Brown told the judge he suspected it related to a police raid of the downstairs flat. (id., PageID.355-359.) Brown managed to call 9-1-1. (id., PageID.332.) He told the operator what happened, and that "Munch" shot him. (id.) The next thing Brown remembered was waking up at the hospital. (id.) Brown had two surgeries, and at the time of trial he still experienced complications related to a spinal injury in his neck. (id., PageID.334.)

Police officers visited Brown at the hospital the next day and showed him a photo, but he testified that he was unable to move or talk. (id., PageID.334-335.) Police visited him a second time, and he selected a picture of Petitioner as the shooter from a six-person photo line-up. (id., PageID.335-336.) Petitioner denied on cross-examination that the first time he was shown a photo

2

he became agitated when presented with a picture of someone named Robert Lopez. (id., PageID.352.)

The victim's brother, Darnell Brown, testified that when he visited the victim in the hospital a few days after the shooting, Lashuran was unable to communicate. (ECF No. 8-8, PageID.377.) Darnell asked who shot him, but LaShuran was only able to respond by making a downward gesture with his hand. (id.) About two weeks later, LaShuran was finally able to speak, and he told Darnell that "the guy Munch downstairs" shot him. (id., PageID.378.) Darnell had known Petitioner for about two years, but he did not know his real name. (id.) He eventually found his real name and gave that information to police. (id.) Darnell identified Petitioner from a photo line-up of six men as the person he also knew as "Munch." (id., PageID.378-380.)

Detroit Police Department (DPD) Officer Cecil Manning testified that he responded to the victim's apartment on the night of the shooting. (id., PageId.384.) The victim was already being treated by EMS. (id., PageID.385.) Manning asked the victim if he knew who shot him, and the victim responded that he only knew the man by his street name, "Munch." (id., PageID.386.)

DPD Officer Gregory Sawmiller testified that he was the first officer to arrive at the scene. (ECF No. 8-8, PageID.398-399.) He found the victim shot in his apartment. (id.) The victim told the officer that "Munch downstairs" was the person who shot him. (id., PageID.399.)

DPD Officer Dena Leath visited the victim in the hospital the day after the shooting. (id., PageID.402.) He was intubated and semi-conscious but could communicate with nods and motioning. (id.) Leath presented him with a photo of single individual, and the victim became "very agitated and started almost … having a medical reaction" when he saw "the actual defendant." (id., PageID.403, 405.) On cross-examination it was revealed that the photo was of someone named Robert Cevelle Lopez. (id., PageID.403-404.)

DPD Detective Earl Monroe testified that he went with Leath to visit the victim at the hospital the day after the shooting. (id., PageID.406-407.) Before going to the hospital, he did some "computer work" to find a person who went by the name "Munch." (id., PageID.408.) He then found a photo of Lopez and showed it to the victim. (id.) When shown the photo, the victim was "actually physically trying to relay something to us. I probably – my assumption was we had the right person at that time, but he never could verbally say anything to me." (id., PageID.408-409.) Monroe subsequently ruled-out Lopez as a suspect. (id., PageID.414.)

Monroe later met with the victim's brother, and based on their conversation, Monroe created the line-up with a photograph of Petitioner. (id., PageID.409.) Monroe showed the victim the line-up on December 12, 2014, when the victim had regained the ability to verbally communicate. (id., PageID.409.) The victim identified Petitioner as the shooter, exclaiming, "that's the motherfu\*\*er that shot me." (id., PageID.410-411.)

After the prosecution rested its case, defense counsel made a record of Petitioner's decision not to mount an alibi defense:

> Defense Counsel: Mr. Hines, we've had a discussion about this yesterday and today, and it is my understanding you do not wish to call any witnesses whatsoever; is that correct?
>
> Petitioner: That is correct.
>
> The Court: You filed an Alibi Witness Notice; correct?
>
> Defense Counsel: Right.
>
> The Court: But you wish to waive calling those witnesses; correct?
>
> Defense Counsel: Yes, ma'am.
>
> The Court: Okay.

(id., PageID.418.)

Petitioner then made an on-the-record waiver of his right to testify in his own defense, a decision he acknowledged he made after discussions with counsel. (id., PageID.418-421.)

The jury acquitted Petitioner of the original assault with intent to commit murder charge, but it found him guilty of the lesser offenses indicated above. (ECF No. 8-9, PageID.479-480.)

Following sentencing, Petitioner filed a claim of appeal. His appointed appellate counsel filed a motion to remand the case to the trial court. (ECF No. 8-11, PageID.507-522.) The motion claimed that trial counsel was ineffective for failing to present the alibi defense. (id.) The motion was supported by an affidavit by Petitioner stating that he informed his trial counsel that the day of the incident was also his birthday, and he was at his birthday party with his girlfriend Mariah Boyd-Lewis and other unnamed friends that night. (id., PageID.524.) He also told his trial counsel that he lived with his grandmother Lois Hines and not in the downstairs flat as described by the victim. (id.)

Appellate counsel also filed her own affidavit in support of the motion to remand stating that she interviewed Boyd-Lewis, who confirmed that she was with Petitioner on his birthday "for at least some of the evening," when "some friends" were throwing a party for him at "Johnny Morgan's house." (id., PageID.526.) Boyd-Lewis also told appellate counsel that she spoke with trial counsel before trial. (id.) Appellate counsel spoke with Petitioner's grandmother, Lois Hines, who told her that on the date in question Petitioner lived with her. (id., PageID.527.)

Appellate counsel further stated in her affidavit that she spoke with trial counsel. Trial counsel told appellate counsel that she did not call Boyd-Lewis as a witness because "she believed her to be an incredible witness." (id., PageID.527.) Trial counsel also said she did not call Boyd-Lewis because "she believed that by Ms. Boyd-Lewis testifying, the jury would hear information about the raid of the downstairs apartment which would supply motive for the shooting." (id.) Trial

5

counsel did not call Lois Hines because Petitioner never told her that he was living with his grandmother. (id.)

The Michigan Court of Appeals denied the motion for remand, "for failure to persuade the Court of the necessity of a remand at this time." (id., PageID.506.)

Petitioner then filed an appellate brief that raised the same two claims raised in his federal habeas petition. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *People v. Hines*, No. 337435, 2018 WL 6184901, at *1 (Mich. Ct. App. Nov. 27, 2018). Petitioner filed an application for leave to appeal in the Michigan Supreme Court that raised the same claims, but it was denied by standard form order. *People v. Hines*, 931 N.W.2d 327 (Mich. 2019) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d) curtails federal habeas review of state convictions for claims adjudicated on the merits by state courts. A habeas petitioner must demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. A decision is "contrary to" clearly established Supreme Court law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. Under this standard, a federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

6

### III. Discussion

A. Ineffective Assistance of Counsel

Petitioner first claims that his trial counsel was ineffective for failing to call his alibi witnesses. The Michigan Court of Appeals found that Petitioner waived the claim:

> On appeal, Hines argues that he was deprived of his right to the effective assistance of counsel because defense counsel failed to call any witnesses on his behalf. The prosecution argues that Hines specifically assented to defense counsel's decision not to call witnesses, thereby waiving his claim of error. We agree with the prosecution that Hines waived his ineffective assistance of counsel claim.
>
> Waiver is "the intentional relinquishment or abandonment of a known right." *People v. Kowalski*, 489 Mich. 488, 503 (2011) (quotation marks and citation omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (quotation marks and citation omitted). "To hold otherwise would allow defendant to harbor error as an appellate parachute." *People v. Shuler*, 188 Mich. App. 548, 552 (1991). Hines argues that he was deprived of his right to the effective assistance of counsel because defense counsel failed to call witnesses—specifically, Hines's girlfriend and grandmother—on his behalf. However, after the prosecution rested, Hines affirmed on the record that he did "not wish to call any witnesses whatsoever[.]" The trial court pointed out that defense counsel filed an alibi witness notice; however, defense counsel confirmed that Hines wished to "waive calling those witnesses[.]" Because the record indicates that Hines acquiesced in the decision not to present defense witnesses, any potential error was extinguished, and he may not now predicate a claim of error on that decision. *See Kowalski*, 489 Mich. at 503; *Shuler*, 188 Mich. App. at 552. *See also People v. Kevorkian*, 248 Mich. App. 373, 413-415 (2001) (rejecting claim of ineffective assistance premised on defense strategy acceded to by the defendant).

*Hines*, 2018 WL 6184901, at *1.

Following the state court's lead, Respondent asserts that Petitioner waived his right to the effective assistance of counsel when he agreed on the record not call any alibi witnesses. Respondent relatedly argues that the review of the claim is procedurally defaulted.

The Court rejects Respondent's waiver argument. Waiver is an "'intentional relinquishment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). "When one knowingly waives his charged error,

7

that challenge is forever foreclosed, and cannot be resurrected on appeal." *Morgan v. Lafler*, 452 F. App'x 637, 646, n.3 (6th Cir. 2011). The problem with Respondent's waiver argument is that the right at issue is not the right to call alibi witnesses in light of the alibi notice – the right implicated by Petitioner's claim is the Sixth Amendment right to the effective assistance of counsel. During the colloquy Petitioner stated that he decided not to call any witnesses in his defense despite the notice of alibi. But at no point during the colloquy did Petitioner waive his Sixth Amendment right to the effective assistance counsel in relation to his counsel's obligation to competently advise him in the first place whether he should present an alibi defense.

The Court also rejects Respondent's procedural default argument. "[A] federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). Determining whether a habeas petitioner's claim has been procedurally defaulted is a four-step inquiry: (1) the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and that petitioner failed to comply with the rule; (2) the court must decide whether the state courts actually enforced the state procedural rule; (3) the court must decide whether the state procedural ground is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim; and (4) the court must determine whether the habeas petitioner can demonstrate there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Kelly v. Lazaroff*, 846 F.3d 819, 828 (6th Cir. 2017).

Respondent's procedural default argument fails at the first step. Respondent cites no state procedural rule requiring Petitioner to object to the conduct of his counsel at trial to preserve an ineffective assistance of counsel claim for direct review. Respondent argues "Hines failed to

comply with a state procedural rule that requires defendants to forego appellate review of an issue after consenting to the alleged error in the trial court. *See People v. Carter*, 612 N.W.2d 144, 149-50 (Mich. 2000)." (ECF No. 7, PageID.86.) But *Carter* is a waiver case – it doesn't purport to create a procedural rule requiring criminal defendants to personally object to the conduct of their trial attorney in order to preserve a claim of ineffective assistance of counsel. *Carter* held that where counsel expresses satisfaction with a trial court's decision to not to re-read testimony to a deliberating jury, any potential error has been waived. *Id.*, 612 N.W.2d at 151. As indicated, Petitioner may have waived the "right" to call alibi witnesses gained by virtue of his filing the alibi notice during the colloquy, but he never waived the right to receive the effective assistance of counsel to competently advise him whether to run an alibi defense.

Respondent acknowledges that if the Court does not accept its waiver or procedural default argument, then review of Petitioner's ineffective assistance of counsel claim is *de novo* because the state court did not adjudicate the claim on the merits. (ECF No. 7, PageID.89.) For the reasons that follow, the Court finds that Petitioner's claim fails on the merits.

In *Strickland v. Washington*, 466 U.S. 668(1984), the Supreme Court set out the familiar two-prong test for determining whether a counsel's assistance is so deficient that it requires a conviction to be set aside. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id.*at 687.

"Whether counsel's performance was 'deficient' under the first prong is determined by reference to 'an objective standard of reasonableness'—specifically, 'reasonableness under

9

prevailing professional norms.'" *Hendrix v. Palmer*, 893 F.3d 906, 921 (6th Cir. 2018) (quoting *Strickland*, 466 U.S. at 688). The second prong of the test requires that the defendant affirmatively prove prejudice, meaning that his counsel's errors "must have 'actually had an adverse effect on [his] defense.'" *Id*. (quoting *Strickland*, 466 U.S. at 693).

      The record does not support Petitioner's claim. Trial counsel did not fail to investigate the alibi witnesses. Trial counsel told appellate counsel that she spoke with Boyd-Lewis and found her not to be a credible witness. Trial counsel also believed that Boyd-Lewis' testimony would prove harmful to the defense because she could testify about the police raid of the downstairs flat, providing the missing motive for the shooting. Meanwhile, appellate counsel's direct conversation with Boyd-Lewis elicited a statement she was only with Petitioner "for at least some of the evening" of the shooting. (ECF No. 8-11, PageID.526.) In light of the facts proffered by Petitioner, a competent attorney might choose to forgo calling Boyd-Lewis as a defense witness. She would not have provided a complete alibi for the evening, she might have provided a motive for Petitioner to shoot the victim, and counsel believed she would not make a credible witness.

      With respect to Lois Hines, there is a factual dispute whether Petitioner told trial counsel that he lived with her. Nevertheless, her statement that Petitioner lived with her on the date of the shooting does not negate the possibility that Petitioner maintained more than one residence or that he frequented the flat regularly enough to lead the victim to believe that he lived there with his girlfriend. Nor was Petitioner's place of residence an issue ignored by trial counsel. Trial counsel cross-examined Detective Monroe on his failure to find evidence corroborating the victim's claim that Petitioner resided in the downstairs flat. Monroe testified that Petitioner's name was not on the lease, he did not find mail going to the flat in Petitioner's name, nor did he bother to get a search warrant for the flat. (ECF No. 8-8, PageID.411-412.) Trial counsel reiterated the lack of

10

evidence that Petitioner lived in the flat in closing. (id., PageID.435-436.) While Lois Hines' testimony might have aided that line of argument, a competent attorney might have chosen to rely exclusively on the detective's complete failure to uncover evidence that Petitioner lived in the downstairs flat. The fact that counsel was concerned that Boyd-Lewis might provide a motive for the shooting suggests some form of connection between Petitioner and the downstairs flat that might have been revealed if counsel presented a defense case. Accordingly, it was not unreasonable under prevailing professional norms for counsel to advise Petitioner to waive the calling of these witnesses.

Furthermore, whether or not the colloquy effectuated a waiver of an ineffective assistance of counsel claim, at a minimum it shows that counsel was aware of the alibi defense and discussed it at least twice with Petitioner. Counsel appears to have allowed Petitioner to make the final call on whether to present the witnesses, and Petitioner opted against it. *Strickland* teaches that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." 466 U.S. at 691. The Sixth Circuit has noted that "[w]here a defendant, fully informed of the reasonable options before him, agrees to follow a particular strategy at trial, that strategy cannot later form the basis of a claim of ineffective assistance of counsel." *Jackson v. McQuiggin*, 553 F. App'x. 575, 582 (6th Cir. 2014) (quoting *United States v. Weaver*, 882 F.2d 1128, 1140 (7th Cir.1989) ("To allow that would be to exempt defendants from the consequences of their actions at trial and would debase the right to effective assistance of counsel enshrined in the sixth amendment.").

This is not a case where defense counsel made an uninformed or incompetent strategic decision or forced Petitioner into making an uninformed decision. She filed a notice of alibi, interviewed Boyd-Lewis, made an assessment of her credibility and value, and then she advised Petitioner against presenting the defense. On this record, the Court will not second-guess what appears to be reasonably competent advice to not present a defense case. The claim is therefore without merit.

B. Sufficiency of the Evidence

Petitioner's second claim asserts that insufficient evidence was presented at trial to prove beyond a reasonable doubt that he concealed a firearm. The Michigan Court of Appeals disposed of the claim on the merits as follows:

> [S]ufficient evidence was presented to support the jury's finding that Hines concealed a gun. Hines argues that the victim's testimony established that the victim did not look at Hines upon opening the door, but instead immediately turned back towards his television. However, at trial, the prosecution questioned the victim about his interactions with Hines directly before the shooting in order to clarify the rapid events:
>
> Q. ... You opened your front door; right?
>
> A. Yes.
>
> Q. And the defendant was standing there; correct?
>
> A. Yes.
>
> Q. Okay. When you opened the front door, did you see the defendant with any sort of weapon?
>
> A. No, not at the time. But as he came in, as I turned going back towards the room, like I said, I heard a click or a rack. I turned around, and that's when I noticed he had a gun ....
>
> During cross-examination, the victim also testified that he opened the door and looked at Hines's face before turning around to go back toward the television. Because the victim testified that he did not see Hines with a gun when he opened the door, the jury could infer that Hines's gun was "not discernible by the ordinary

12

> observation of persons casually observing the person carrying it." *Hernandez-Garcia*, 266 Mich. App. at 421 (quotation marks and citation omitted). Therefore, a reasonable jury could have found beyond a reasonable doubt that Hines concealed his gun from the victim. *See Gaines*, 306 Mich. App. at 296.

*Hines*, 2018 WL 6184901, at *2–3.

Under clearly established Supreme Court law, the standard governing sufficiency of the evidence claims is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under AEDPA, moreover, a habeas court's "review of a state-court conviction for sufficiency of the evidence is very limited," *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018), because *Jackson* claims are "subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651, 132 S. Ct. 2060, 182 L. Ed. 2d 978 (2012) (per curiam). First, it is the responsibility of the jury to decide what conclusions should be drawn from the evidence admitted at trial. *Johnson*, 566 U.S. at 651 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)). "And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id*. (quoting *Smith*, 565 U.S. at 2); see also *Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017) (stating that "two layers of deference apply [to a sufficiency-of-the-evidence claim], one to the jury verdict, and one to the state appellate court").

The state court did not unreasonably apply the *Jackson* standard. When the victim opened the door, he did not see Petitioner with a gun. After he heard the click or rack, he turned around and then saw Petitioner pointing a gun at him. Although the prosecutor did not specifically ask the victim whether he saw that the victim's hands were empty when he first opened the door, a reasonable inference could be made by the jury beyond a reasonable doubt based on the victim's

13

description of events that Petitioner waited for the victim to turn his back on him to produce a gun concealed on his person. The claim was reasonably decided by the state courts and is therefore without merit.

As neither of Petitioner's habeas claims merits relief, the petition will be denied.

## IV. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). The applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate the Court's conclusion that Petitioner has failed to demonstrate entitlement to habeas relief with respect to his claims because they are devoid of merit. Therefore, a certificate of appealability is denied.

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, and 2) **DENIES** a certificate of appealability.

**SO ORDERED.**

                                                s/ Victoria A. Roberts
                                                Hon. Victoria A. Roberts
                                                United States District Judge

Dated: 7/18/2022